```
 1  UNITED STATES BANKRUPTCY COURT (NOT FOR PUBLICATION)
    SOUTHERN DISTRICT OF NEW YORK
 2  -------------------------------
    In Re:
 3
    RORBERT CAMERON HOWARD            Chapter 7
 4       And
    JENNIFER WILLIAMS HOWARD          Case No. 09-22557 (RDD)
 5
         Debtors.
 6  -------------------------------
    S&T BANK,                         Adv.Proc.09-08269 (RDD)
 7       Plaintiff,
 8                                    New York, New York
              v.
 9                                    Hearing October 28, 2009
                                              2:35 p.m.
10  Howard, et al.
         Defendant
11
    ---------------------------------------
12
13    MODIFIED BENCH RULING ON MOTION TO DISMISS ADVERSARY PROCEEDING
               BEFORE THE HONORABLE ROBERT D. DRAIN
14                 UNITED STATES BANKRUPTCY COURT

15  APPEARANCES:

16  Mr. James B. Glucksman, Esq.  Rattet, Pasternak and
    For Defendant                 Gordon Oliver,
17  Jennifer Howard               550 Mamaroneck Avenue
18                                Harrison, New York 10528

19  Mr. Keith M. Brandofino, Esq. Phillips Lytle, LLP
    For Plaintiff                 437 Madison Avenue
20                                New York, New York 10022

21  Robert Cameron Howard
    PRO SE
22  Defendant
23
    Drake Smith Associates
24  PRO SE
    Defendant
25
    Angela Miller & Angela Z. Miller
    For Plaintiff
```

1

2

3
              THE COURT:    All right.   Plaintiff S&T Bank has filed

4
a complaint against Robert Cameron Howard, Drake Smith

5
Associates, LLC, and, as is relevant to the matter before me,

6
Jennifer Williams Howard, who's a Chapter 7 debtor in this

7
Court.   Mrs. Howard has moved to dismiss the complaint under

8
Bankruptcy Rule 7012, which incorporates Federal Rule of Civil

9
Procedure 12(b)(6).   When considering a motion under Rule

10
12(b)(6), the Court must assess the legal feasibility of the

11
complaint, not weigh the evidence that might be offered in its

12
support.   Koppel v. 4987 Corporation, 167 F.3d 125, 133 (2d

13
Cir. 1999).   The Court's consideration "is limited to facts

14
stated on the face of the complaint, or the documents appended

15
to the complaint, or incorporated in the complaint by

16
reference, as well as to matters of which judicial notice may

17
be taken."   Hertz Corp. v. City of New York, 1 F.3d 121, 125

18
(2d Cir. 1993) cert. denied, 510 U.S. 1111 (1993).   The Court

19
accepts the complaint's factual allegations as true, and must

20
draw reasonable inferences in favor of the plaintiff.   Tellabs

21
Inc. v. Makor Issues & Rights Ltd., 551 U.S. 308, 323 (2007).

22
Rule 8(a) does not, moreover, require a claimant to set forth

23
any legal theory justifying the relief sought on the facts

24
alleged, requiring only sufficient factual reference to show

25
that the claimant may be entitled to some form of relief.

Newman v. Silver, 713 F.2d 14, 15 (2d Cir. 1983).   Tolle v.

Carroll Touch, Inc., 977 F. 2d 1129, 1134 (7th Cir. 1992).

However, if a complaint's allegations are clearly

contradicted by documents incorporated into the pleadings by

reference, the Court need not accept them.   Labajo v. Best Buy

Stores, L.P., 478 F. Supp. 2d 523, 528 (S.D.N.Y. 2007).

Moreover, the Court is "not bound to accept as true a legal

conclusion couched as a factual allegation."   Papasan v.

Allain, 478 U.S. 265, 286 (1986).   Instead, the complaint must

state more than "labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Relatedly, while the Supreme Court has confirmed in

light of the notice pleading standard under Federal Rule of

Civil Procedure 8(a) that a complaint does not need detailed

factual allegations to survive a motion under Rule 12(b)(6) --

see Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007), its

"factual allegations must be enough to raise a right to relief

above the speculative level."   Bell Atlantic v. Twombly, 550

U.S. at 555.   The complaint must contain sufficient facts

accepted as true to state a claim that is "plausible on its

face."   Id. at 570.   In other words, if the claim would not

otherwise be plausible on its face, the plaintiff must allege

sufficient facts to "nudge the claim across the line from

conceivable to plausible."   Id. Otherwise the defendant should

1 not be subject to the burdens of discovery and the worry of

2 overhanging litigation.  Id.

3      Evaluating plausibility is "a context-specific task

4 that requires the Court to draw on its judicial experience and

5 common sense.  But where the well pleaded facts do not permit

6 the Court to infer more than mere possibility of misconduct,

7 the claim has alleged -- but it has not shown -- that the

8 pleader is entitled to relief."  Ashcroft v. Iqbal, 129 S. Ct.

9 1937, 1949 (2009).  "When there are well pleaded factual

10 allegations, a Court should assume their veracity and then

11 determine whether they plausibly give rise to an entitlement to

12 relief."  Id. at 1950.  "The plausibility standard is not akin

13 to a 'probability requirement,' but it asks for more than sheer

14 possibility that a defendant has acted unlawfully."  Id.

15      In sum, therefore, applying Twombly, the Supreme

16 Court has observed that "the pleading standard Rule 8 announces

17 did not require 'detailed factual allegations' but it demands

18 more than an unadorned 'the defendant unlawfully harmed me'

19 accusation."  Iqbal, 129 S. Ct. at 1949 (citations omitted.

20 "Therefore in determining whether a claim should survive a

21 motion to dismiss, a court must first identify each element of

22 the cause of action."  Id. at 1947.  Next, the court "must

23 identify the allegations that are not entitled to `the

24 assumption of truth' because they are legal conclusions, not

25 factual allegations."  Id. at 1951.  And, finally, the court

1    must assess the factual allegations in the context of the

2    elements of the claim to determine whether they "plausibly

3    suggest an entitlement to relief." Id.

4         Here, S&T Bank brings claims under 11 U.S.C. section

5    523(a)(2)(A) and 11 U.S.C. section 523(a)(6).

6         Section 523(a)(2)(A) of the Bankruptcy Code provides

7    in pertinent part that "A discharge under this title does not

8    discharge an individual debtor from any debt or money,

9    property, services, or an extension, renewal or refinancing of

10   credit to the extent obtained by false pretenses, or false

11   representation, or actual fraud, other than a statement

12   respecting the debtor's or an insider's financial condition."

13   A claim under this "fraud" exception requires that the claim

14   satisfy the heightened pleading requirements for fraud pursuant

15   to Fed. R. Civ. P. 9(b). See In re Jacobs, 403 B.R. 565, 574

16   (Bankr. N.D. Ill. 2009)(citations omitted), as well as In re

17   Kanaley, 241 B.R. 795, 803 (Bankr. S.D.N.Y. 1991).

18        Rule 9(b) states "In alleging fraud, a party must

19   state with particularity the circumstances constituting fraud

20   or mistake.  Malice, intent, knowledge, and other conditions of

21   a person's mind may be alleged generally."  While intent or

22   knowledge may be averred generally, however, the plaintiff must

23   still plead the events claimed to give rise to an inference of

24   intent or knowledge, Devaney v. Chester 813 F.2d 566, 568 (2d

25   Cir. 1987), which may be accomplished by pleading facts

1  consistent with certain well established "badges of fraud."  In

2  re Sharp Int'l Corp., 403 F.3d 43, 56 (2d Cir. 2004).  In

3  addition to providing a defendant with fair notice of the

4  claim, Rule 9(b) serves the purpose of protecting a defendant

5  from harm to his or her reputation or good will by unfounded

6  allegations of fraud, and by reducing the number of strike

7  suits.  In re Actrade Financial Technologies Ltd., 337 B.R.

8  791, 801 (Bankr. S.D.N.Y. 2005).

9       Before focusing on section 523(a)(2)(A) in more

10  detail, it also should be noted that it is a primary purpose of

11  the Bankruptcy Code to relieve the honest debtor from the

12  weight of oppressive indebtedness and permit him or her to

13  start afresh, by providing the debtor a new opportunity in life

14  and a clear field for future effort unhampered by the pressure

15  and discouragement of pre-existing debt.  Therefore, exceptions

16  to discharge, including under section 523(a)(2)(a), are to be

17  narrowly construed, as has been repeatedly stated by the Second

18  Circuit and courts within the Second Circuit.  See In re

19  Renshaw 222 F.3d 82, 86 (2d Cir. 2000); In re Sanchez, 365 B.R.

20  414, 417 (Bankr. S.D.N.Y. 2007).

21     In In re Chase, 372 B.R. 133 (Bankr. S.D.N.Y.), the court

22  discussed the elements of false pretenses, false

23  representations and actual fraud, as they exist in section

24  523(a)(2)(A).  As an initial matter, those three terms, as used

25  in that section, "embody different concepts in Congress' use of

1  the disjunctive, or evidence an intent to deny a discharge

2  under any such term." Id. at 136.  The term "false pretenses"

3  is defined as "conscious, deceptive or misleading conduct,

4  calculated to obtain or deprive another of property." Id.

5  (quoting Gentry v. Kolver, 249 B.R. 238, 261 (Bankr. S.D.N.Y.

6  2000)).  It includes an implied misrepresentation or conduct

7  intended to create a false impression. Id.  The term "false

8  representation" requires that the plaintiff present proof that

9  the defendant (1) made a false or misleading statement, (2)

10 with the intent to deceive, and (3) to cause the plaintiff to

11 turn over money or property to the defendant. Id. (citing In

12 re Dobrayel 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002)).  The term

13 "actual fraud" requires proof of the five fingers of fraud, or

14 five elements of fraud, which are (1) a misrepresentation, (2)

15 fraudulent intent or scienter, (3) intent to induce reliance,

16 (4) justifiable reliance, and (5) damage.  See In re Dobrayel,

17 287 B.R. at 12.  A reckless representation or silence regarding

18 a material fact may in some cases constitute the requisite

19 falsity, and in certain cases a causal link, as opposed to

20 actual reliance, may establish the creditor's injury.  See In

21 re Gonzalez, 241 B.R. 67, 74 (S.D.N.Y. 1999), and In re Lupino,

22 221 B.R. 693, 701 (Bankr. S.D.N.Y. 1998).  Although the statute

23 could conceivably be read as providing that one's debt may not

24 be subject to the discharge if one merely benefits from someone

25 else's fraud, in keeping with the Congressional purpose behind

1   section 523 that is not the approach taken by the courts.   The

2   foregoing case law requires fraudulent conduct, false

3   pretenses, or false representations on the part of the

4   particular debtor in question, either directly or by

5   imputation.

6          I have reviewed the complaint here, and I see nothing

7   in the complaint that would satisfy Rule 8, let alone Rule

8   9(b), as to whether a claim has been alleged under Bankruptcy

9   Code section 523(a)(2)(A) for fraud, false pretenses or

10  misrepresentation.   The complaint deals with two loans, in

11  connection with which it is alleged the debtor's husband,

12  Robert Howard, committed fraud.   In each case it is alleged

13  that the loan proceeds, which were intended to be applied to

14  specific construction projects, were instead retained by "the

15  Debtors" -- that is, both Mr. Howard and Mrs. Howard, without

16  any differentiation as to how they were retained, whether they

17  were retained jointly, or by one or the other of them.

18         With respect to the first loan, which involves a

19  property on Locust Avenue, in Rye, New York, it is asserted

20  that "the Debtors," that is Mr. Howard and Mrs. Howard,

21  executed a loan agreement and mortgage, and that under the loan

22  agreement funds would be advanced periodically upon "the

23  Debtors' request" which merely summarizes a provision of the

24  loan agreement.   The complaint, in the next paragraph,

25  paragraph 23, states that between January 31, 2007 and

1   September 8, 2008, Mrs. Howard's husband, Robert Howard, made

2   nine written advance requests, signed by him, as set forth in

3   paragraph 24, and that, as set forth in paragraph 28, the bank

4   subsequently learned that Robert Howard's representations, in

5   the Locust Avenue advance requests and in the Locust Avenue

6   supporting documents regarding construction work that had been

7   completed at the Locust Avenue property, were materially false,

8   and that, as set forth in paragraph 33, S&T Bank relied upon

9   such material misrepresentations made by Robert Howard and

10  disbursed the funds as requested.

11       The first factual allegation clearly pertaining

12  solely to Mrs. Howard, other than that she was the co-borrower

13  under the Locust Avenue agreement and co-owner of the Locust

14  Avenue property, is found at paragraph 60 in the first claim

15  for relief under section 523(a)(2), where the complaint states,

16  "As co-borrower under the Locust Avenue agreement and co-owner

17  of the Locust Avenue property, Jennifer Howard had actual

18  knowledge of, or should have known of, or was recklessly

19  indifferent to, the fraud perpetrated by Robert Howard." No

20  facts are alleged to support this statement other than those

21  previously noted.

22       As to the second loan, the facts are even more

23  barebones and conclusory.  In the second loan, it is stated in

24  paragraph 34, upon information and belief, that "The Debtors

25  owned 50 percent of the membership interest in Drake Smith"

1   -- not specifying which of the two debtors or how, if they both

2   owned an interest, they owned it.  (Drake Smith is an LLC

3   that's also named as a defendant.)  And then the complaint, in

4   paragraph 35, states that, upon information and belief, Robert

5   Howard is, or at all relevant times was, the managing member of

6   Drake Smith, that Drake Smith incurred indebtedness from S&T

7   Bank, and, as stated in paragraph 38, Drake Smith executed a

8   promissory note and granted, as set forth in paragraph 39, a

9   mortgage encumbering the relevant property.  And then it is

10  stated that, as set forth in the Drake Smith loan agreement,

11  Drake Smith was permitted to apply for advances under the loan

12  with respect to work actually done by the general contractor

13  and for material and equipment actually incorporated into the

14  Drake Smith property, and, as set forth in paragraph 44, Robert

15  Howard, acting on behalf of Drake Smith, made non-written

16  advance requests in respect of the property.  Paragraph 45

17  states that each such request was signed by Robert Howard.

18  Paragraph 49 then states that the bank subsequently learned

19  that representations made by Robert Howard, and/or Drake Smith,

20  in the Drake Smith advance requests and Drake Smith supporting

21  documents regarding construction work that had been completed

22  at the Drake Smith property, were materially false.  And

23  paragraph 54 states that S&T Bank, unaware of the material

24  misrepresentations made by Robert Howard and/or Drake Smith,

25  relied thereon in furnishing the funds.

1    The only basis for the complaint to state that Mrs.

2  Howard is liable under section 523(a)(2) in respect of all the

3  foregoing is set forth in paragraph 75, in which it is stated

4  that, as a co-owner of Drake Smith, Jennifer Howard had actual

5  knowledge of, or should have known, or was recklessly

6  indifferent to, the fraud perpetrated by Robert Howard and

7  Drake Smith -- i.e., it's asserted that, simply as a

8  shareholder of the borrower, Mrs. Howard had actual knowledge

9  of, or should have known of, or was recklessly indifferent to,

10  the corporate borrower's fraud perpetrated through its officer,

11  her husband. No other facts are alleged to support that

12  allegation.

13    Clearly no misrepresentation by Mrs. Howard has been

14  alleged here, or any intent on her part to induce reliance

15  thereon.  Moreover, I find that the conclusory allegation that

16  she had knowledge or was recklessly indifferent is just that, a

17  conclusory allegation, simply reciting one of the elements of

18  the cause of action; and, under both Rule 9(b), as well as Rule

19  8, the complaint is, therefore, deficient in setting forth a

20  cause of action under section 523(a)(2)against Mrs. Howard in

21  respect of either of the two loans.  It not only does not plead

22  sufficient "badges of fraud" as to her intent, it also does not

23  plead facts, as opposed to conclusions, describing her fraud,

24  as opposed to her husband's or Drake Smith Associates LLC's.

25  To be contrasted with the present complaint, are the facts pled

1    in In re Demarest 176 B.R. 917 (Bankr. W.D. Wash. 1995), where

2    the plaintiff clearly asserted that the defendant wife, Mrs.

3    Demerest, actively participated in the concealment of the

4    fraud, even though the fraud was committed by her husband, and

5    that such concealment resulted in a direct benefit to her.  The

6    present complaint does not set forth anything like comparable

7    facts to that scenario.

8         It's also clear that if a so-called "imputation"

9    theory may be used to impute Mr. Howard's alleged frauds to

10   Mrs. Howard (a concept that is subject to conflicting case law)

11   -- but to the extent that the imputation theory would apply in

12   this Circuit -- the complaint does not state a cause of action

13   based on imputing Mr. Howard's alleged fraud to Mrs. Howard. As

14   far as the validity of the "imputation" theory in the first

15   place is concerned, see the conflicting authorities cited in

16   paragraph 523.08[3] of 4 Collier on Bankruptcy (15th ed. 2009)

17   at 523-52-3.  The courts that have recognized the imputation of

18   one spouse's fraud or wrongdoing to the other have generally

19   concluded that it must be shown that the debtor-spouse was a

20   partner, a business partner or the business partner, of the

21   spouse who committed the fraud, "or was otherwise in a

22   principal/agent relationship."  Id; see generally In re

23   Tsurukawa 258 B.R. 192, 198 (9th Cir. BAP 2001), as well as In

24   re Luce, 960 F.2d 1277, 1282-83 (5th Cir. 1992), and In re

25   Allison, 960 F.2d 481, 485-86 (5th Cir. 1992).   In that latter

1   case, while recognizing the validity of the imputation therein,

2   the Fifth Circuit refused to impute a husband's fraudulent

3   conduct to a wife where there was "no evidence in the record

4   linking the wife to false or fraudulent acts or plans, and

5   where no agency relationship was established."

6        The complaint here does not plead facts setting forth

7   any such agency or other business relationship with respect to

8   the conduct of the operation of Drake Smith Associates LLC or

9   the operation of, or the making of the representations in

10   respect of, the Locust Avenue property, nor, as noted, any

11   facts, as opposed to conclusory allegations, linking Mrs.

12   Howard to the fraudulent acts of her husband, let alone facts

13   regarding her own alleged misconduct.  Merely being a co-

14   borrower on the Locust Avenue property or, in an unspecified

15   way, an interest holder in Drake Smith Associates LLC does not

16   suffice. Without more, therefore, the complaint's claim under

17   section 523(a)(2) of the Bankruptcy Code should be dismissed.

18        The complaint also, on the same allegations, asserts a

19   claim under section 523(a)(6) of the Bankruptcy Code.  That

20   section provides that "A discharge under Section 727 of this

21   title does not discharge an individual from any debt for

22   willful and malicious injury by the debtor to another entity,

23   or to the property of another entity."  It has been held that

24   the word "willful" in this context means, "a deliberate or

25   intentional injury, not merely a deliberate or intentional act

1   that leads to injury."  Ball v. A.O. Smith Corp., 451 F.3d 66,

2   69 (2d Cir. 2006).  "Malicious" in this context means "wrongful

3   and without just cause or excuse," even in the absence of

4   personal hatred, spite, or ill will.  Id. at 70.  While it may

5   be argued that all fraud could conceivably constitute willful

6   and malicious injury, that would render section 523(a)(6)

7   superfluous, given section 523(a)(2)(A), although some courts

8   nevertheless have applied taken that approach -- see Printy v.

9   Dean Witter Reynolds, Inc., 110 F.3d 853, 859 (1st Cir. 1997).

10  (However, I've already found that the complaint has not set

11  forth a claim for fraud).

12          This Court has held, however, that there must be a

13  difference between fraud and "willful and malicious injury" as

14  used in section 523(a)(6), and that, therefore, section

15  523(a)(6) is not subsumed by section 523(a)(2).  See In re

16  Lupino, 221 B.R. at 700, in which Judge Hardin stated that

17              "Actual malice may be inferred or imputed from the

18              fact that the debtor's conduct, giving rise to

19              liability, has no potential for economic gain or

20              other benefit to the debtor, from which one could

21              only conclude that the Debtor's motivation must have

22              been to inflict harm upon the creditor."

23  To the extent that that interpretation applies, i.e. that

24  section 523(a)(6) is aimed more at conduct that maliciously

25  inflicts harm, as opposed to all fraudulent conduct, the

1  forgoing facts that I've recited from the complaint are also,

2  however, clearly deficient in setting forth a section 523(a)(6)

3  claim.   The claim isn't even pleaded as, in the words of Iqbal,

4  an unadorned and conclusory, "the defendant unlawfully harmed

5  me" accusation.   It merely repeats the same representations and

6  conclusory statements that the defendant Mrs. Howard <u>must</u> have

7  known about the fraudulent misconduct of her husband and co-

8  borrower (on the Locust Avenue property) and/or the business,

9  Drake Smith Associates LLC, in which she owned some unspecified

10 interest; therefore, the complaint clearly does not set forth a

11 cause of action in respect of either of the loans under

12 Bankruptcy Code section 523(a)(6).

13       I should note that I've been addressing, as I believe

14 I must, only the complaint and the documents attached to it, or

15 referred to in it, or incorporated in it by reference.   The

16 responsive papers to the motion have alleged that there are

17 additional facts -- or have alleged additional facts -- that

18 might go to show a cause of action under section 523(a)(2).

19 However, it's a basic principle that a complaint may not be

20 amended by the briefs in opposition to a motion to dismiss,

21 and, therefore, I haven't considered those factual allegations

22 as set forth in the responsive papers.   See In re Jacques, 2009

23 WL 2915823 (Bankr. E.D.N.Y. September 4, 2009).

24       Nor am I persuaded by the plaintiff's argument that

25 the Court should overlook the complaint's deficiencies because

1   the plaintiff is largely in the dark about Mrs. Howard's

2   conduct.   Not only is this argument at cross purposes with Rule

3   9(b) and the basic Rule 8 pleading requirements enunciated by

4   the Supreme Court in Twombly and Iqbal, but also it is belied

5   by the fact that the plaintiff has had ample time to take free

6   ranging discovery under Bankruptcy Rule 2004 before filing its

7   complaint.

8          So, for all those reasons, the motion is granted, and

9   the complaint's causes of action as against Mrs. Howard are

10  dismissed.

11         At oral argument counsel for the plaintiff raised the

12  possibility of seeking to amend the complaint, and I'll

13  consider such a motion if it's raised.   I can tell you,

14  however, that I have substantial doubts about the efficacy of

15  an amendment, at least with regard to the Drake Smith

16  Associates LLC property.   But I'll wait to see such a motion if

17  it's made.

18

19

20

21

22

23

24

25